

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | | |
|---|---|---|
| CANAL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case Number: |
| v. | ) | 7:09-cv-00411-JEO |
| | ) | |
| SUSAN DIANE WOODS, as personal | ) | |
| representative of the Estate of Adam | ) | |
| Wesley Woods, Deceased; DAPHNE R. | ) | |
| HINTON, as personal representative of | ) | |
| the Estate of Gregory Michael Hinton, | ) | |
| Deceased; and UPS FREIGHT, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

This is an interpleader action in which the plaintiff, Canal Insurance Company ("Canal"), seeks for the court to declare its obligations relative to the proceeds of a liability insurance policy. Canal alleges that competing claims to the proceeds have been made by the defendants in this action, Susan Diane Woods, Daphne R. Hinton, and UPS Freight, who assert that the misconduct of Canal's insured caused a motor vehicle collision that resulted in wrongful death and property damage. The parties have consented to jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). On July 9, 2009, the court held a hearing on Canal's interpleader complaint. Upon consideration of the pleadings, the arguments presented by the parties at the hearing, and the relevant law, the court concludes that Defendant UPS Freight is not precluded as a matter of law from pursuing its claims upon the policy proceeds and that the parties shall be given until August 5, 2009 to attempt to reach a settlement of the claims in this action, in light of the matters set forth herein. Should the parties be unwilling or unable to reach a settlement, the

court will hold a hearing on August 12, 2009, at which time the parties will have a final opportunity to present evidence and argument to establish their respective claims in this action.

## I.      BACKGROUND

Defendants Susan Woods and Daphne Hinton represent the respective estates of their deceased husbands, Adam Wesley Woods and Gregory Michael Hinton (the "decedents"), Georgia citizens who were employed by defendant UPS Freight.  (*See* Complaint (hereinafter the "Complaint" or "Compl."), Doc. 1, ¶¶ 2, 3, 9; Answer of UPS Freight ("UPS Answ."), Doc. 5, ¶¶ 2, 3, 9; Answer of Interpleader Defendants Susan D. Woods and Daphne R. Hinton ("Widows Answer"), Doc. 4, ¶¶ 2, 3, 9; Complaint filed by the Widows in the Circuit Court of Greene County, Alabama ("State-Court Complaint" or "State-Court Compl."), Exhibit B to Compl., Doc. 1-3, ¶¶ 1, 2).  On February 1, 2008, the decedents were killed while acting within the scope of their employment in an accident on an interstate highway in Greene County, Alabama, when the UPS Freight long-haul tandem trailer truck in which they were driving collided with a tractor trailer driven by Matin Gonzalez, an employee of Canal's insured, F.C.O.R.P.S. Carriers, Inc. ("F.C.O.R.P.S.").  (Compl. ¶ 9; UPS Answ. ¶ 9; Widows Answ. ¶ 9; State-Court Compl. ¶ 10). Thereafter, UPS Freight paid workers' compensation benefits as a result of the deaths of the decedents.  (Compl. ¶ 12).

On July 10, 2008, Susan Woods and Daphne Hinton (hereinafter the "widows") filed a lawsuit on behalf of the respective estates of their decedents in the Circuit Court of Greene County, Alabama, against F.C.O.R.P.S., amongst others, alleging that its negligent or wanton misconduct proximately caused the wrongful death of the decedents.  (*See* Compl. ¶ 10; *see also*

*generally* State-Court Compl.). At the time of the accident, F.C.O.R.P.S. was covered by

liability insurance policy issued by Canal, with policy limits of $ 1 million per occurrence.

(Compl. ¶ 8). On March 1, 2009, Canal filed the instant interpleader action in this court pursuant

to Rule 22, FED. R. CIV. P., and 28 U.S.C. § 1332, naming the widows and UPS Freight as

defendants. (*See generally* Compl.). Canal says that it has received competing claims of

entitlement to the proceeds from both the widows and UPS Freight. (*Id.* ¶ 13). Specifically, the

widows have asserted that they are due to recover the entire policy proceeds based upon the

alleged liability of F.C.O.R.P.S. for the decedents' wrongful deaths under Alabama law.

(Widows Answ. ¶ 8). UPS Freight has likewise sought to be paid part of the proceeds for

property damage to its truck involved in the accident, as well as for workers' compensation

payments UPS Freight says it paid to the decedents' estates. (Compl. ¶¶ 11, 12; UPS Answ. ¶¶

11, 12 and paragraph captioned "Rights and Claims to the Policy Proceeds"). In the complaint,

Canal alleges that the amount of the proceeds sought by UPS Freight totals $148,921.89. (*See*

Compl. ¶¶ 11, 12). In its answer, UPS Freight initially confirmed the accuracy of those claimed

amounts. (UPS Answ., paragraph captioned "Rights and Claims to the Policy Proceeds"). At the

recent hearing, however, UPS Freight's counsel represented that the total of its claims has

increased to $168,343.25, comprised of $78,421.36 for property damage to the UPS Freight

truck, plus workers compensation payments made in the amounts of $44,921.89 for Mr. Woods

and $45,000.00 for Mr. Hinton. Canal has stated that it "will deposit" $ 1 million with the clerk

of this court, representing the limits of its liability coverage, and Canal has asked the court to

declare the rights and obligations of the parties relative to such proceeds. (Compl. ¶¶ 14, 15). In

their Report of Parties' Planning Meeting, filed pursuant to Rule 26(f), FED. R. CIV. P., the

parties agreed that no discovery would be necessary and that it is appropriate for the court, upon holding a hearing, to determine the disposition of the policy proceeds.  (Report of Parties' Planning Meeting, Doc. 8, at 2).  The court has held that requested hearing, and the court now turns to the parties' arguments regarding their claims on the proceeds.

## II.   DISCUSSION

### A.   The Applicable Law

#### 1.   Interpleader Actions Generally

"Interpleader enables a person holding a fund to compel persons asserting conflicting claims to that fund to adjudicate their rights to the fund in a single action."  *Lummis v. White*, 629 F.2d 397, 399 (5th Cir. 1980)[1], *rev'd on other grounds sub nom. Cory v. White*, 457 U.S. 85 (1982) (citing *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 534 (1967); *Texas v. Florida*, 306 U.S. 398, 405-06 (1939); F. James, Civil Procedure s 10.21 (1965); 3A Moore's Federal Practice P 22.02(1), at 22-4 (2d ed. 1979)).  Where, as here, subject-matter jurisdiction is founded upon diversity of citizenship[2], a federal court applies the substantive law of the forum in

---

[1]The decisions of the former Fifth Circuit handed down before October 1, 1981 are binding in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

[2]The court would note that Canal does not invoke, and this court does not possess, subject-matter jurisdiction under to 28 U.S.C. § 1335, the federal interpleader statute.  That statute conditions jurisdiction upon the plaintiff actually having deposited, upon the filing of the action, the money or property at issue into the district court or has given a sufficient bond, neither of which Canal has done.  *See* 28 U.S.C. § 1335(a)(2); *Murphy v. Travelers Ins. Co.*, 534 F.2d 1155, 1159 (5th Cir. 1976).  Nonetheless, an interpleader action is authorized without such a deposit under Rule 22, FED. R. CIV. P., *see Murphy, supra*, where diversity jurisdiction can be established.  *See Ellington v. Metropolitan Life Ins. Co.*, 217 F.2d 609, 610 (5th Cir. 1954).  Under the diversity statute, district courts have subject-matter jurisdiction over civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.  28 U.S.C. § 1332(a)(1).  The materials before the court show that both prongs of diversity jurisdiction are satisfied here.  The amount-in-controversy requirement is met insofar as the complaint alleges that the limits of the relevant policy are $1 million and that the widows and UPS Freight have made conflicting claims as to the disposition of over $148,000 of the policy proceeds. There is also diversity of citizenship between the plaintiff and the defendants.  Plaintiff Canal is a South Carolina citizen, where it is both incorporated and has its principal place of business, *see* 28 U.S.C. § 1332(c)(1).  (Compl. ¶ 1).  On the other side of the ledger, defendant UPS Freight is a Virginia citizen, where it is both incorporated and has its principal place of business (Compl. ¶ 4; UPS Answ. ¶ 4), while the citizenship of the defendant widows is derivative of that of their respective decedents, *see* 28

4

which it sits, including its choice-of-law rules. *Continental Cas. Co. v. Continental Cas. Co. v. Adamo*, 326 F.3d 1181, 1182 (11th Cir. 2003); *Employers' Fire Ins. Co. v. Canal Ins. Co.*, 788 F.2d 1522, 1523 (11th Cir. 1986); *New York Life Ins. Co. v. Baum*, 617 F.2d 1201, 1204 (5th Cir. 1980). In this case, of course, the forum is Alabama.

## 2.      The Workers' Compensation Reimbursement/Subrogation Claims

The court will first take up the parties' disagreement over whether UPS Freight is entitled to recover against the policy proceeds based upon workers' compensation payments UPS Freight allegedly has made to the estates of the decedents, in the amounts of $44,921.89 for Mr. Woods and $45,000 for Mr. Hinton, respectively. The widows urge that UPS is not entitled to any recovery based upon any workers' compensation payments it might have made to the decedents or their estates. The widows claim, and UPS Freight has not disputed, that workers' compensation benefits paid as a result of the decedents' deaths occurred pursuant to the workers' compensation laws of Georgia, the state in which the decedents resided and were employed. Therefore, the widows argue, any right of subrogation on the part of UPS Freight is ultimately to be determined by reference to Georgia law, which does not, the widows say, afford an employer a right of subrogation to a third-party recovery under the circumstances here. The court disagrees. As explained below, the applicable substantive law here is that of Alabama, not Georgia, and the Alabama Workers' Compensation Act grants UPS Freight a right of reimbursement for death benefits it has paid, to be recovered out of any wrongful death recovery or settlement from a third party.

---

U.S.C. § 1332(c)(2), who were Georgia citizens. (*See* State-Court Compl. ¶¶ 1, 2).

This issue is governed by *Northeast Utilities, Inc. v. Pittman Trucking Co.*, 595 So. 2d 1351 (Ala. 1992).  There, an employee of Northeast Utilities, a Connecticut corporation, who was a covered employee under Connecticut's Workers' Compensation statutes, was fatally injured in an accident in Alabama involving a Pittman Trucking Company dump truck.  595 So. 2d at 1352.  Following the employee's death, his widow demanded and received workers' compensation benefits from Northeast Utilities under the Connecticut statute.  *Id.*  She then sued in an Alabama state court, alleging that Pittman Trucking and its driver and another defendant had negligently caused her husband's wrongful death.  *Id.*  The defendants in the wrongful death action settled with the widow for $500,000, and the trial court granted Northeast Utilities' motion to intervene to determine what interest, if any, it had in the settlement proceeds.  *Id.* at 1352-53.  The trial court held that Alabama law governed and that it granted no right of subrogation in Northeast Utilities to the proceeds, based upon Ala. Code § 6-5-410(c) (1975) of the Alabama Wrongful Death Act, which provides that a wrongful death recovery is not subject to any liens or encumbrances.  *Northeast Utilities*, 595 So. 2d at 1353.  On the ensuing appeal by the employer, the Alabama Supreme Court agreed with the trial court on the choice-of-law question, holding that because the accident occurred in Alabama, under the lex loci delicti rule, Alabama law controlled both as to the underlying wrongful death claim and as to Northeast Utilities' claim upon the settlement proceeds, notwithstanding that its workers' compensation payments to the widow occurred pursuant to Connecticut law.  *Id.*  However, the Alabama Supreme Court ultimately reversed because the Court disagreed with the trial court's conclusion that Alabama substantive law provided no right in favor of Northeast Utilities as an employer that had paid workers' compensation death benefits.  *Id.* at 1354.  The Alabama Supreme Court

explained that, notwithstanding any general statements in the Wrongful Death Act, the Alabama

Workers' Compensation Act, by Ala. Code § 25-5-11(a) (1975)[3], specifically allows that "an

employer or insurer is entitled to subrogation for amounts paid to the deceased employee's

dependents."  *Id.*  The Court concluded:

> Therefore, because Alabama substantive law applies in this case, and because the
> Alabama legislature has provided that employers are entitled to be reimbursed out
> of any judgment recovered by the employee or his personal representative in an
> action against the third-party tort-feasor, Northeast Utilities is entitled to be
> reimbursed out of the proceeds of [the] wrongful death settlement.

*Northeast Utilities*, 595 So. 2d at 1354.  Subsequent cases have also recognized and re-affirmed

this principle.  *See Trott v. Brinks, Inc.*, 972 So. 2d 81, 85 (Ala. 2007) ("[A]n employer who had

paid workers' compensation benefits, including disability or death benefits, is entitled to be

reimbursed for those payments, even from a punitive damages award." (citing *Millers Mut. Ins.

Ass'n v. Young*, 601 So. 2d 962 (Ala. 1992)); *Johnson v. Huxford Pole & Timer Co.*, 983 So. 2d

1133, 1138-40 (Ala. Civ. App. 2007); *O'Neal v. Kennamer*, 958 F.2d 1044, 1046-47 (11th Cir.

---

[3]Alabama Code § 25-5-11(a) (1975) provides in relevant part as follows:

If the injury or death for which compensation is payable under Articles 3 or 4 of this chapter was caused under circumstances also creating a legal liability for damages on the part of any party other than the employer, whether or not the party is subject to this chapter, the employee, or his or her dependents in case of death, may proceed against the employer to recover compensation under this chapter or may agree with the employer upon the compensation payable under this chapter, and at the same time, may bring an action against the other party to recover damages for the injury or death, and the amount of the damages shall be ascertained and determined without regard to this chapter. ...  If the injured employee, or in case of death, his or her dependents, recovers damages against the other party, the amount of the damages recovered and collected shall be credited upon the liability of the employer for compensation.  If the damages recovered and collected are in excess of the compensation payable under this chapter, there shall be no further liability on the employer to pay compensation on account of the injury or death. *To the extent of the recovery of damages against the other party, the employer shall be entitled to reimbursement for the amount of compensation theretofore paid on account of injury or death.*

Ala. Code § 25-5-11(a) (1975) (emphasis added).

1992); *but cf. Trott*, 972 So. 2d at 86-87 (holding that, under § 25-5-11(a), an employer has no right of reimbursement or subrogation relative to a wrongful death recovery based upon the employer's payment of medical or vocational benefits under the Alabama Workers' Compensation Act).

Because the accident in the instant case occurred in Alabama, the substantive law of the forum applies to determine UPS Freight's right of reimbursement or subrogation stemming from workers' compensation death benefits it has allegedly paid to the respective estates of the decedents. *See Northeast Utilities*; *O'Neal, supra*. Accordingly, the court finds that the widows' reliance upon Georgia law is misplaced. Further, Ala. Code § 25-5-11(a) (1975) grants to UPS Freight a right to reimbursement out of any recovery against a third party for wrongful death for workers' compensation benefits, including death benefits, that UPS Freight has paid. *See Northeast Utilities*; *Trott*; *Young*; and *Johnson*, *supra*. Thus, the court also rejects the widows' contention that UPS Freight has no reimbursement rights, as a matter of law, relative to any of the policy proceeds that might be paid to the widows, for such proceeds would represent a wrongful death settlement or recovery from Canal's insured for purposes of § 25-5-11(a). *See American Economy Ins. Co. v. Thompson*, 643 So. 2d 1350, 1353-54 (Ala. 1994). Further, notwithstanding the widows' emphasis upon the inadequacy of the policy limits to satisfy Canal's insured's wrongful death liability, UPS Freight's statutory right of reimbursement is not affected by whether or not the widows would be made whole by the sum they would receive from a third party's liability insurer. *See Davidson v. Pet, Inc.*, 644 So. 2d 896, 897-98 (Ala. 1994); *Maryland Cas. Co. v. Tiffin*, 537 So. 2d 469, 474 (Ala. 1988); *River Gas Corp. v. Sutton*, 701 So. 2d 35, 38 (Ala. Civ. App. 1997). However, an employer that enjoys a right of reimbursement or

8

subrogation for workers' compensation payments it has made is responsible for a pro rata share of attorneys' fees and permitted expenses incurred by the employee or his personal representative in securing a third-party settlement or recovery.  *See* Ala. Code § 25-5-11(e) (1975); *Ayers v. Duo-Fast Corp.*, 779 So. 2d 210, 214-15 (Ala. 2000); *Maryland Cas. Co. v. Tiffin*, 537 So. 2d 469, 474 (Ala. 1988); *South Ala. Utilities v. Lambert*, 957 So. 2d 484, 489-90 (Ala. Civ. App. 2006).

### 3.      Damage to UPS Freight's Truck

The parties also disagree over whether UPS Freight is entitled to any of the policy proceeds as compensation for property damage to UPS Freight's truck involved in the accident. Neither party has been able to refer the court to any authority that might supply standards or considerations to guide the court's decision on this issue.  However, the court's own research has revealed several authorities on point.

Under Alabama law, principles of equity apply to interpleader actions.  *Putman v. Womack*, 607 So. 2d 166, 167 (Ala. 1992).

> Whenever several persons are all entitled to participate in a common fund, or are all creditors of a common debtor, equity will award a distribution of the fund, or a satisfaction of the claims, in accordance with the maxim, equality is equity; in other words, if the fund is not sufficient to discharge all claims upon it in full, or if the debtor is insolvent, equity will incline to regard all the demands as standing upon an equal footing, and will decree a pro rata distribution or payment.

*Id.* at 169 (quoting 2 Spencer W. Symons, Pomeroy's Equity Jurisprudence § 407 at 147 (5th ed. 1941)).  Applying this principle, the Alabama Supreme Court has indicated that when all competing claims are equal in both priority and amount, the interpled funds are to be divided

equally as between the claimants. *See Putman*, 607 So. 2d at 169. Multiple claimants asserting the insured's liability for their respective decedents' wrongful deaths arising out of the same vehicular accident would implicate such claims of equal priority and value under Alabama law. *See id.* at 167. However, where claimants have sustained unequal losses, the Alabama Supreme Court has held that an equitable distribution is achieved through awards to each claimant in proportion to the amount of each one's special damages. *See Sheehan v. Liberty Mut. Fire Ins. Co.*, 258 So. 2d 719, 724 (Ala. 1972); *see also State Farm Mut. Auto. Ins. Co. v. Hamilton*, 326 F. Supp. 931, 936 (D.S.C. 1971) ("Generally where multiple claims have not been reduced to judgment and such claimants are entitled to participate in a common fund or are all creditors of a common debtor, equity will make prorated distribution of the fund among the creditors.") 12 Couch on Ins. § 170:27 (3d ed. June 2009 Supp.) ("Where several claims arising from one accident are joined in one suit against the insurer whose maximum liability under the policy is inadequate to pay in full the amounts to which the claimants become entitled, it has generally been held that the proceeds are to be distributed on a pro rata basis in accordance with the amount of damage suffered by each claimant."); V.H. Cooper, Annotation, *Basis and manner of distribution among multiple claimants of proceeds of liability insurance policy inadequate to pay all claims in full*, 70 A.L.R.2d 416 (1960). It would appear that, for purposes of making an equitable proration, a court in interpleader is authorized to estimate the underlying damages and value of competing claims that have not been reduced to judgment. *See, e.g., Gaines v. Standard Acc. Ins. Co.*, 32 So. 2d 633, 639 (La. App. 1 Cir. 1948).

## B.     Application of the Law - Where Do We Go From Here?

Based on the foregoing legal principles, the court first concludes that, because Alabama

law applies, UPS Freight would have a right under Ala. Code § 25-5-11(a) to be reimbursed for any workers' compensation payments it actually made in connection with the deaths of the decedents.  *Northeast Utilities*, 595 So. 2d at 1354.  Because these claims for reimbursement can be fully satisfied out of the proceeds of the policy, and they exist without regard to whether the widows might be made whole by the proceeds of the Canal policy, they would have priority over the widows' claims upon the proceeds otherwise.  *See Thompson*, 643 So. 2d at 1353-54; *Davidson,* 644 So. 2d at 897-98.  By this, the court means simply that UPS Freight would be entitled to be reimbursed under § 25-5-11(a) without regard to whether the widows have been "made whole" and without any proportional reduction based upon a comparison to the value of the widows' claims.  UPS Freight would be responsible, however, for a pro rata share of the widows' attorney fees and expenses in securing the settlement.  *See Ayers*, 779 So. 2d at 214-15.

With regard to UPS Freight's claim for property damage to its truck, such amounts to a claim, the court concludes, that is equal in priority but unequal in value to the two pending wrongful death claims of the widows.  None of these claims have been reduced to judgment, so the court must do its best to assign relative values to them for purposes of prorating a distribution of the policy proceeds.  UPS Freight's property damage claim is relatively straightforward, for it can be calculated to an amount certain, a sum that UPS Freight says is $78,421.36.  Assigning a value to the wrongful death claims, by contrast, is substantially more difficult.  A claim brought under the Alabama Wrongful Death Act, Ala. Code § 6-5-410 (1975), is the "*paradigmatic unliquidated claim*," insofar as "the damages are *entirely punitive*, imposed for the purpose of preserving human life, and not for the purpose of compensation."  *Bishop v. Chilton County*, 990 So. 2d 287, 290 (Ala. 2008) (emphasis original; internal quotation marks and citations omitted).

11

The Alabama Supreme Court has explained:

> The legislature has authorized the jury to ascertain an amount of damages appropriate to the goal sought to be achieved-preservation of life because of the enormity of the wrong, the uniqueness of the injury, and the finality of death. Where the enormous wrong results from the combined actions of several tort-feasors, the relative culpability of multiple defendants is only one factor that the jury may consider.  Because the policy of this state is to regard human life as being beyond measure in terms of dollars, the jury must disregard the decedent's wealth or lack of wealth, it must disregard the decedent's potential for accumulating great wealth or lack of potential to accumulate wealth; and it must disregard his or her talents and education, or lack of them, as well as his or her station in life.  The jury's consideration of the "enormity of the wrong" includes assessing the finality of death, the propriety of punishing the wrongdoer or wrongdoers, whether the death could have been prevented, and, if so, the lack of difficulty that would have been involved in preventing the death, as well as the public's interest in deterring others from committing the same or similar wrongful conduct.

*Campbell v. Williams*, 638 So. 2d 804, 811 (Ala. 1994) (citing *Deaton, Inc. v. Burroughs*, 456 So. 2d 771, 776 (Ala. 1984)).  Notwithstanding such focus upon punishment of the defendant and deterrence of others, Alabama law has long held that where the conduct of multiple defendants combines and concurs to proximately cause a wrongful death, all such defendants are jointly and severally liable for the entire punitive damages award, irrespective of potential differences in their respective levels of culpability.  *See Boles v. Parris*, 952 So. 2d 364, 366-67 (Ala. 2006); *Campbell,* 638 So. 2d at 809-11; *General Motors Corp. v. Edwards*, 482 So. 2d 1176, 1190 (Ala. 1985).

As indicated by the foregoing, the value of the widows' respective wrongful death claims are determined primarily by reference to the misconduct and status of the defendants in the underlying action in Greene County, rather than upon the wealth, earning potential, or other characteristics of the widows' decedents.  And because both the decedents were killed while

12

riding in the same truck and in the same accident, arising out of the same alleged misconduct by the same defendants, the widows' respective wrongful death claims will be deemed equal in value, relative to each other.[4]  *See Putman*, 607 So. 2d at 167-69.  Attempting to put a dollar value on those claims is, however, a more difficult, necessarily inexact science.  Based upon the representations of the widows' counsel at the hearing, there is at least some reason to suspect that F.C.O.R.P.S., Canal's insured, may be a relatively small trucking company with limited assets from which it might satisfy a judgment.  Such circumstances, if shown, would tend to cabin the upper reaches of a permissible wrongful death punitive award.  *See Tillis Trucking Co., Inc. v. Moses*, 748 So. 2d 874, 888 (Ala. 1999) ("Given the undisputed liability coverage of $1,000,000 and the fact that the highest estimate of Tillis Trucking's worth is $500,000, it appears that the highest judgment the defendants could reasonably be expected to pay would be a judgment for $1,500,000.").  But based upon the limited information available to the court, and based upon a review of wrongful death awards affirmed in similar Alabama cases, the court believes that each widow here would likely be awarded between $1.5 million and $3 million on her wrongful death

---

[4]The court notes that the value, at least in the context of settlement, of the widows' respective wrongful death claims could be different from each other, notwithstanding that both the decedents died in the same accident while occupants of the same truck.  In particular, the court could conceive of a scenario in which the wrongful death claim of one decedent would face a materially greater risk of being defeated at trial by a plea of contributory negligence.  All other things being equal, it would seem more likely that a defendant could establish a contributory negligence defense against the driver of the "other" vehicle than it would be to do so against a passenger.  *See Barnett v. Norfolk So. Ry. Co.*, 671 So. 2d 718, 720 (Ala. Civ. App. 1995).  In this case, Mr. Woods was driving the UPS Freight truck at the time of the accident, while Greg Hinton was a passenger. (Compl. ¶ 9; Widows Answ. ¶ 9; UPS Answ. ¶ 9).  However, the court does not believe that the driver or passenger status of the widows' decedents actually alters the relative value of their respective wrongful death claims.  In the first place, there has been no argument to that effect.  Moreover, it seems to be undisputed that the driver of the F.C.O.R.P.S. truck lost control of that vehicle while traveling in a southbound lane of I-59, causing the truck to cross the median and hit the oncoming UPS Freight truck of the decedents as it was traveling in a proper, northbound lane.  (State-Court Compl. ¶ 10).  Thus, based on the material and information that have been put before the court, it would not appear that a contributory negligence defense is likely viable as against either Woods or Hinton in the underlying state-court action.  *See, e.g., Shows v. Donnell Trucking Co.*, 631 So. 2d 1010, 1013 (Ala. 1994) ("It appears clear from the evidence presented by [the defendant trucking company] and [its defendant truck driver] that [the defendant truck driver] could have done nothing to avoid the collision with the vehicle driven by [the plaintiff's decedent], who, that evidence indicates, swerved across the median and into [the defendant truck driver]'s lane for no apparent reason.")

claim if she were to prevail at trial.  *See Tillis Trucking*, 748 So. 2d at 888-91 (affirming $1.5 million award against trucking company on wrongful death claim arising out of vehicular collision); *Lemond Constr. Co. v. Wheeler*, 669 So. 2d 855, 862-63 (Ala. 1995) ($3.5 million for wrongful death from vehicular collision); *Industrial Chemical & Fiberglass Corp. v. Chandler*, 547 So. 2d 812, 833  (Ala.1989) ($2.5 million award affirmed for each of two widows, based on wrongful-deaths from chemical fire); *Edwards*, 482 So. 2d at 1198-99 (affirming trial court's remittitur of wrongful death awards against auto manufacturer to $1.4 million for each of two decedents killed in collision); *Deaton,* 456 So. 2d at 776 ($835,000 award affirmed for wrongful death in the collision of two tractor-trailer trucks).  While these numbers still represent a wide value range, they will suffice for present purposes.  If the $1.5 million figure is used, the ratio of the widows' combined proportional share of the proceeds remaining vis-á-vis the share of UPS Freight for its property damage claim is approximately 38 to 1; if the $ 3 million figure is used, the ratio increases to over 76 to 1.[5]  Either way, it is clear that the value of the wrongful death claims dwarfs the value of UPS Freight's property damage claim.  Moreover, the court is strongly inclined to give the benefit of doubts here regarding equitable proration to the widows.  Their claims are based upon the lives of their husbands, lost as they toiled on the job for UPS Freight.  That employer, by contrast, has continued to press a competing claim upon the policy proceeds, thereby diminishing what at this point appears to be a substantially limited pool of assets to pay the widows' claims, in order that UPS Freight might be compensated for property damage to the truck in which the decedents were riding when they were killed.

---

[5]($1.5 million x 2) = $ 3 million / $78,421.36 = approx. 38.254.
 ($ 3 million x 2) = $ 6 million / $78,421.36 = approx. 76.509

Before concluding, there is one other matter that the court will address.  At the hearing, counsel for the widows raised the matter that he has yet to be provided with documentation verifying that, as a factual matter, UPS Freight had actually suffered the losses it has alleged in support of its claims upon the policy proceeds.  Namely, the widows' counsel queried whether a third-party workers' compensation carrier, rather than UPS Freight itself, might have been the actual dispenser of any workers' compensation payments or similarly whether a third-party property insurer may have already compensated UPS Freight for damage to its truck.  Counsel for UPS Freight responded that it was his understanding that UPS Freight had suffered the losses it claims, but he could not say that he had personally seen documentation affirmatively confirming such to be the case.  The court advised that it would be willing to assume for the time being that UPS Freight had itself suffered the losses it claims and that, if the need arose after resolution of questions of law, the court would give UPS Freight an opportunity to present evidence establishing its alleged property damage losses and workers' compensation benefit payments.  UPS Freight did not object to such a proposal, and, given the court's rulings that UPS Freight is not precluded as a legal matter from recovering on its claims against the policy proceeds, the court will adhere to that plan.  The court would mention, however, that such gaps of knowledge regarding the circumstances underlying the defendants' respective claims to the proceeds has resulted primarily because counsel for the parties, including that of the widows, insisted that there was no need to conduct any discovery before this court should resolve the controversy. (*See* Report of Parties' Planning Meeting, Doc. 8, at 2).

## III.     CONCLUSION

The court's plan is now this: Having tipped its hand with regard to what it believes are

the guiding legal principles, as well as its inclinations regarding the parties' relative rights and obligations generally, the court will give the parties until **August 5, 2009** to reach an agreement to settle the claims underlying this action.  If the parties fail to advise the court by the close of business on that date that they have reached a settlement, the parties shall appear at a hearing at **10:00 a.m. on August 12, 2009, Courtroom 3, Hugo Black U.S. Courthouse, Birmingham, Alabama,** at which time they will be afforded a final opportunity to present any and all evidence and argument in support of any claim or asserted right of recovery in this action.  Such would specifically include, but not be limited to, an opportunity for UPS Freight to present evidence showing that it has itself paid the workers' compensation benefits and sustained the property loss it alleges as the basis for its claims upon the policy proceeds.

      **DONE**, this 24th day of July, 2009.

_John E. Ott_
_____

**JOHN E. OTT**
United States Magistrate Judge